IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| NATHANIEL HARVEY, | : |
| Plaintiff, | : |
| v. | : Case No. 4:22-cv-61-CDL-MSH |
| S. WILSON, *et al.*, | : |
| Defendants. | : |
| _____ | : |

## ORDER AND RECOMMENDATION

Pending before the Court are Defendants Latoya Key Merritt and Stephanie Wilson's ("Defendants") motions for summary judgment (ECF Nos. 48, 49), and Plaintiff Nathaniel Harvey's motion to appoint counsel (ECF No. 56). For the following reasons, it is recommended that Merritt and Wilson's motions be granted, and Harvey's motion is denied.

### PROCEDURAL BACKGROUND

The present action is brought under 42 U.S.C. § 1983 and arises out of Harvey's confinement at Rutledge State Prison ("RSP") in Milledgeville, Georgia. Recast Compl. 3, 5, ECF No. 9. Harvey alleges that on August 20, 2020, while attempting to move a metal ramp at RSP, his hand and fingers were severely damaged and had to undergo three surgeries—including amputations—between 2020 and 2021. *Id.* at 5. In relevant part, Harvey alleges that a nurse supervisor—now identified as Merritt—ordered Wilson, a nurse, to stop changing the dressing on his injured finger and to stop giving Harvey his medications at pill call. *Id.*

Following three extensions of time to complete discovery (ECF Nos. 36, 38, 43), Merritt and Wilson filed motions for summary judgment on October 2, 2023 (ECF Nos. 48, 49).[1] Harvey filed a response to the motions for summary judgment (ECF No. 52), to which Merritt and Wilson replied (ECF Nos. 53, 54).[2] Merritt and Wilson's motions are ripe for review.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

---

[1] During the relevant period, Merritt was employed by two different entities. Merritt Br. in Supp. of Mot. for Summ. J. 2, ECF No. 48-1; Defs.' Br. in Supp. of Mot. for Summ. J. 2 n.2, ECF No. 49-2. As a result, counsel for both entities filed briefs on behalf of Merritt, with one attorney also representing Wilson.

[2] Harvey filed what appears to be a virtually identical response after Merritt and Wilson filed their replies. *Compare* Pl.'s Resp., ECF No. 52, *with* Pl.'s Resp., ECF No. 55.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. *Id.* at 324-26. This evidence must consist of more than conclusory allegations. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. Plaintiff's Response

While Harvey responded to Merritt and Wilson's motions for summary judgment, he did not respond to their statement of facts. The Local Rules of the United States District Court for the Middle District of Georgia provide:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Because Harvey did not respond to Merritt and Wilson's statements of facts, and thus did not specifically controvert any material facts set forth therein (ECF Nos. 48-2, 49-1), the facts set forth therein are deemed admitted where appropriate.

However, in considering the merits of a motion for summary judgment, even an unopposed motion, a court must, at least, "review all of the evidentiary materials submitted in support of the motion for summary judgment." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). In other words, the Court cannot simply accept the facts stated in a moving party's statement of material facts as true but must also review the movant's citations to the record and confirm that there are no issues of material fact. *Id.* at 1103 n.6. Moreover, Rule 56 of the Federal Rules of Civil Procedure allows the Court to consider the entire record when ruling on a motion for summary judgment. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1519 (11th Cir. 1990) (per curiam) ("[T]he court must consider the entire record in the case, not just those pieces of evidence which have been singled out for attention by the parties.").

### III.   Statement of Facts

On August 20, 2020, Harvey was instructed by his supervisor to go to the back dock at RSP and help load a truck. Pl.'s Dep. 9:10-13, 10:15-16, ECF No. 48-6.[3] While

---

[3] Merritt and Wilson submitted the same transcript of Harvey's deposition in support of their motions for summary judgment, but the transcripts are paginated differently. Merritt Ex. D Pl's Dep., ECF No. 48-6; Defs.' Ex. Pl's Dep., ECF No. 49-3. For convenience and clarity, the Court cites to the transcript submitted by Merritt.

4

attempting to lift the ramp to the truck, the ramp slid over Harvey's finger and crushed his finger. *Id.* at 9:13-17. Harvey was instructed to go to medical, and he was then taken to the hospital, where he was given medication and unknown medical providers attempted to sew his left middle finger back together. *Id.* at 9:4-7, 9:17-19, 9:24-10:9, 11:22-12:2. At that time, he was not told that he would need to have an amputation. *Id.* at 10:10-12. When Harvey arrived back at RSP, medical records show that the dressing on his finger was clean and dry, he was provided pain medication, and he began a seven-day course of antibiotics. Merritt Ex. B Medical Records 1, ECF No. 48-4.

Harvey first became aware of how serious his injury was on August 23 or 24, 2020, at RSP when his bandages were first changed and he was told that part of his finger would need to be removed. Merritt Ex. B Medical Records 1; Pl.'s Dep. 10:13-11:11. From then on, the medical records indicate that Harvey received daily or near-daily dressing changes from August 25, 2020, until September 28, 2020, and at each appointment, the appearance and drainage of the wound, and whether there was any odor, was recorded. Merritt Ex. B Medical Records 5-7; Defs.' Ex. Wound Care Flow Sheets 1-3, ECF No. 49-4.

The first surgery on Harvey's finger was on October 5, 2020, and a portion of his left middle finger was removed. Pl.'s Dep. 11:12-15; Merritt Ex. B Medical Records 11. According to Harvey, the surgery was necessary because there was infection in his finger. Pl.'s Dep. 13:1-10. Medical records show that the left middle finger at the distal interphalangeal joint was removed, partly at the request of Harvey, who indicated that he did not wish to go through multiple surgeries. Merritt Ex. B Medical Records 11.

5

Thereafter, dressing changes began on October 8, 2020, with the physician ordering dressing changes for six days. *Id.* at 13. Dressing changes and peroxide soaks resumed on October 23, 2020, and continued through November 17, 2020. *Id.* at 14-15. Medical records show that Harvey was a no show, or he refused treatment at eleven of those visits, and he was at an outside appointment for one of those visits, on November 12, 2020. *Id.* Harvey continued to have follow ups and receive medical treatment over the course of several weeks. *Id.* at 18, 20-22, 33; Defs.' Ex. Wound Care Flow Sheets 7-8.

Ultimately, Harvey ended up having two more surgeries on his left middle finger. On June 7, 2021, he had a second amputation. Merritt Ex. B Medical Records 29. That surgery was followed by continued treatment and monitoring. *Id.* at 23-26; Defs.' Ex. Wound Care Flow Sheets 9-12. Medical records show that following the second amputation, Harvey frequently did not show up for bandage changes. Defs.' Ex. Wound Care Flow Sheets 9-12. His third surgery was on August 9, 2021. Merritt Ex. B Medical Records 31-32. Following that surgery, Harvey continued to receive bandage changes and treatment from medical providers. Defs.' Ex. Wound Care Flow Sheets 13-14; Merritt Ex. B Medical Records 27-28. The purpose of the two additional surgeries, according to Harvey, was to stop the infection in his finger.[4] Pl.'s Dep. 14:5-19. Ultimately, Harvey's finger was amputated to below the top joint of his left middle finger but above the bottom joint, which he likened to having a quarter of the finger removed. Pl.'s Dep. 12:7-23.

---

[4] Harvey testified about a fourth surgery that he says occurred in September 2021, but there are no medical records of this surgery. *See* Pl.'s Dep. 15:4-18.

6

At various times, Harvey was to receive pain medication, including Tylenol 3, but because it was a controlled substance, it was the standard practice across all facilities that it could only be administered in the medical unit. Pl.'s Dep. 19:7-24. Further, Harvey testified that Wilson was frequently "smart" with him and would say that she did not care if he ever received his treatment, and when he would talk to Merritt when she first arrived each day in August 2020 following his initial surgery, she told him to go through procedures and fill out a sick call, but the facility had no healthcare provider for Harvey to see. *Id.* at 19:25-22:6, 22:17-24:25.

## IV. Deliberate Indifference Standard

"The [E]ighth [A]mendment, which applies to the states through the [F]ourteenth [A]mendment, prohibits the infliction of cruel and unusual punishment . . . . [S]tates violate the [E]ighth [A]mendment if they are deliberately indifferent to a prisoner's serious medical needs[.]" *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1571-72 (11th Cir. 1985) (internal citations omitted). In order to prove a claim of deliberate indifference, a plaintiff "must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The first prong is an objective inquiry, requiring the plaintiff to prove an "objectively serious medical need." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious

harm." *Dang ex rel. Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (internal quotation marks and citations omitted).

The second prong is a subjective inquiry. *Ireland*, 53 F.4th at 1287. To establish deliberate indifference to a serious medical need, a plaintiff must prove: "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Id.* (internal quotation marks omitted). "[M]edical treatment violates the Constitution only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Dang ex rel. Dang*, 871 F.3d at 1280 (quotation marks omitted). Moreover, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Importantly, "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Jacoby v. Baldwin Cnty.*, 596 F. App'x 757, 766-67 (11th Cir. 2014) (per curiam) (second alteration in original) (quoting *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)). Deliberate indifference may be found in "situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id.* at 767 (quoting *Hill*, 40 F.3d at 1187). However, where an inmate "complains that delay in medical treatment rose to a

8

constitutional violation" the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* (quoting *Hill*, 40 F.3d at 1187).

## V. Claims against Defendants

Harvey contends that Merritt and Wilson were deliberately indifferent because Merritt allegedly ordered Wilson to stop changing Harvey's dressings and pill call distributions. Recast Compl. 5. The Court recommends Merritt and Wilson be granted summary judgment for two reasons.

First, the evidence before the Court shows Harvey received treatment for his injured finger. To be sure, he ultimately required several surgeries on his finger. However, the evidence shows that, following those surgeries, Harvey received dressing changes and medical treatment regularly. Further, even if the Court finds Merritt did order Wilson to stop providing treatment to Harvey, he still continued to receive medical treatment. Courts are reluctant to find violations of the Eighth Amendment when a prison inmate has received medical care, as Harvey did on many occasions, usually for weeks at a time following his surgeries. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (citing *Hamm*, 774 F.2d at 1575). Notably, even if the treatment was poor, the Eighth Amendment does not require medical care to be "perfect, the best obtainable, or even very good." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting *Harris*, 941 F.2d at 1510). As the Eleventh Circuit has recently—and emphatically— reminded district courts:

[i]t bears repeating that deliberate indifference is <u>not</u> a constitutionalized

9

version of common-law negligence. To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that "the deliberate indifference standard . . . is far more onerous than normal tort-based standards of conduct sounding in negligence," and is in fact akin to "subjective recklessness as used in the criminal law[.]"

*Swain v. Junior*, 961 F.3d 1276, 1288 (11th Cir. 2020) (citations omitted) (second alteration in original). At most, Harvey has alleged medical malpractice, but medical malpractice is not the constitutional standard applicable to his claims.

Second, where an inmate "complains that delay in medical treatment rose to a constitutional violation" the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Jacoby*, 596 F. App'x at 767 (quoting *Hill*, 40 F.3d at 1187). Harvey has not done so here. Instead, in his responses to the motions for summary judgment, Harvey primarily argues breach of contract—which is not at issue here. Pl.'s Resp. to Merrit Mot. for Summary J., ECF No. 52; Pl.'s Resp. to Defs.' Mot. for Summary J., ECF No. 55. This requirement is particularly relevant to Harvey's claims, as he alleges that a lack of treatment caused his injury to be more severe—exactly the situation, and the reason why, a plaintiff must present medical evidence in order to establish the detrimental effect of delay in treatment.

Finally, to the extent Harvey testified that he did not receive medical treatment, his conclusory and uncorroborated statements are insufficient to create a genuine issue of material fact such that trial is required. "Conclusory, uncorroborated allegations by a plaintiff in [a] deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (per curiam) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081

10

(11th Cir. 1990)). Indeed, "[g]enuine disputes are those in which evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Id.* (first quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); and then citing Fed. R. Civ. P. 56(e)). At this time, all that is before the Court are Harvey's unsupported allegations and the evidence presented by Merritt and Wilson. As a result, Harvey has not shown a genuine issue of material fact. Accordingly, Merritt and Wilson are entitled to summary judgment.

## ORDER

Also pending before the Court is Harvey's motion for appointment of counsel (ECF No. 56). Harvey claims that appointed counsel is necessary because he cannot afford one, his imprisonment greatly limited his ability to litigate his claims, he has limited access to the law library and limited knowledge of the law, and a trial would likely involve conflicting testimony such that counsel is required. Pl.'s Mot. to Appoint Couns. 1, ECF No. 56.

A district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam). Appointment of counsel is "instead a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Id.* In determining whether a case presents extraordinary circumstances, the Court considers

> (1) the type and complexity of the case; (2) whether the plaintiff is capable of adequately presenting his case; (3) whether the plaintiff is in a position to adequately investigate the case; (4) whether the evidence "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination"; and (5) whether the appointment of counsel would be of service to the parties and the court "by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." The District Court may also inquire into whether the plaintiff has made any effort to secure private counsel.

*DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The Court has considered Harvey's motion and—after applying the factors set forth above—concludes that appointed counsel is not justified. While Harvey may not be able to afford counsel, the facts of this matter are not complex or unknown to him, and he has demonstrated the ability to litigate his case, including filing pleadings and motions sufficiently setting out his contentions to allow review by this Court, including in response to Merritt and Wilson's motions for summary judgment. Further, Harvey's lack of access to prison law library is belied by his numerous citations in his responses to the motions for summary judgment. Pl.'s Resp. to Merrit Mot. for Summary J.; Pl.'s Resp. to Defs.' Mot. for Summary J. Finally, the Court has recommended that Merritt and Wilson's motions for summary judgment be granted, and if adopted by the district judge, there will be no trial in this matter.[5] Accordingly, Harvey's motion seeking appointed counsel (ECF No. 56) is **DENIED**.

---

[5] Should the Court's recommendation be rejected and this matter proceeds to trial, Harvey may move for appointment of counsel, which motion will be considered in light of the factors discussed, above.

## CONCLUSION

For the reasons explained above, **IT IS RECOMMENDED** that Merritt and Wilson's motions for summary judgment (ECF No. 48, 49) be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within **FOURTEEN (14) DAYS** after being served with a copy hereof. Any objection should be no longer than **TWENTY (20) PAGES** in length. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 13th day of February, 2024.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE